1  GREENBERG TRAURIG, LLP
   Ian C. Ballon (SBN CA 141819)
2  1900 University Avenue, 5th Floor
   East Palo Alto, CA 94303
3  Telephone: 650.328.8500
   Facsimile: 650.328.8508
4  ballon@gtlaw.com

5  GREENBERG TRAURIG, LLP
   Lori Chang (SBN CA 228142)
6  1840 Century Park East, Suite 1900
   Los Angeles, California 90067-2121
7  Telephone: 310.586.7700
   Facsimile: 310.586.7800
8  changl@gtlaw.com

9  Attorneys for defendant
   Chegg, Inc.
10

11

12                 **UNITED STATES DISTRICT COURT**

13           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14

15  EXAMINATIONS INSTITUTE OF THE          Case No.   17-CV-03522-JD
    AMERICAN CHEMICAL SOCIETY,
16  DIVISION OF CHEMICAL EDUCATION,        **DEFENDANT'S NOTICE OF MOTION AND**
                                           **MOTION TO DISMISS PURSUANT TO**
17          Plaintiff;                     **FED. R. CIV. PROC. 12(B)(6);**
                                           **MEMORANDUM OF POINTS AND**
18  v.                                     **AUTHORITIES**

19  CHEGG, INC.,                           [Filed concurrently with Request for Judicial
                                           Notice; Proposed Order]
20          Defendant.
                                           Date:      August 17, 2017
21                                         Time:      10:00 a.m.
                                           Dept:      Courtroom 11
22                                         Judge:     The Honorable Judge Donato

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 17, 2017 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Judge James Donato, Courtroom 11 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, defendant Chegg, Inc. will and hereby does respectfully move for an order dismissing plaintiff's claims pursuant to Fed. R. Civ. Proc. 12(b)(6).

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Request for Judicial Notice, all pleadings and papers on file in this action, and such other written or oral argument as may be properly presented to the Court at the hearing.


Respectfully submitted,

DATED:  July 10, 2017                    GREENBERG TRAURIG, LLP


By:   _/s/ Ian C. Ballon_
            Ian C. Ballon
            Lori Chang
Attorneys for defendant Chegg Inc.

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... 3

II.     PLAINTIFF'S ALLEGATIONS ................................................................................... 3

III.    LEGAL STANDARD .................................................................................................... 5

IV.     ARGUMENT ................................................................................................................ 5

     A.      Plaintiff Fails to Allege A Claim For Copyright Infringement .......................... 5

     B.      Plaintiff's Lanham Act Claim Is A Disguised Copyright Claim And Is Subject
             To Dismissal ....................................................................................................... 9

     C.      Plaintiff Fails To State A Claim Under Cal. Bus. & Prof. Code § 17500 ("FAL") ......... 12

     D.      Plaintiff Fails To State A Claim Under Cal. Bus. & Prof. Code § 17200 ("UCL") ........ 13

          1.   Plaintiff Fails To Allege Standing ....................................................... 13

          2.   Plaintiff Fails To Allege A Violation Of The UCL ............................. 14

     E.      Plaintiff Fails To State A Claim For Tortious Interference With Prospective
             Economic Advantage ......................................................................................... 16

V.      CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994)........................................................................6, 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................5, 10

*Baden Sports, Inc. v. Molten USA, Inc.*,
    556 F.3d 1300 (Fed. Cir. 2009)........................................................................11

*Baker v. Selden*,
    101 U.S. 99 (1879)..................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................5, 10

*Classic Media, Inc. v. Mewborn*,
    532 F.3d 978 (9th Cir. 2008)........................................................................9

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*,
    606 F.3d 612 (9th Cir. 2010)........................................................................7

*Damabeh v. 7-Eleven, Inc.*,
    2013 U.S. Dist. LEXIS 66565 (N.D. Cal. May 8, 2013) ........................................16, 17

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010)........................................................................5

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)..............................................................................2, 3, 9, 11

*Feist Publications, Inc. v. Rural Tel. Service Co*,
    499 U.S. 340 (1991)................................................................................6

*Fractional Villas, Inc. v. Tahoe Clubhouse*,
    No. 08cv1396–IEG–POR, 2009 WL 160932 (S.D. Cal. Jan. 22, 2009)............................11

*Freecycle Network, Inc. v. Oey*,
    505 F.3d 898 (9th Cir. 2007)........................................................................10

*Funky Films, Inc. v. Time Warner Entm't Co.*,
    462 F.3d 1072 (9th Cir. 2006)........................................................................8

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985)................................................................................9

*Hodsdon v. Mars, Inc.*,
    162 F.Supp.3d 1016 (N.D. Cal. 2016) ...................................................................15

*Johnson v. PNC Mortgage*,
    No. C 14–02976 LB, 2014 WL 3962662 (N.D. Cal. Aug. 12, 2014) ...........................13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)...........................................................................12, 15

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992) ..............................................................................8

*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir. 2016)..................................................................................1

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
    2013 U.S. Dist. LEXIS 72790 (C.D. Cal. Mar. 4, 2013) ...........................................17

*Norcia v. Samsung Telecomms. Am., LLC*,
    No. 14-CV-00582-JD, 2015 WL 4967247 (N.D. Cal. Aug. 20, 2015)...........................12

*Nu Sci. Corp. v. eFasteam.com*,
    2004 U.S. Dist. LEXIS 17763 (N.D. Cal. Aug. 24, 2004) ..........................................18

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S. Ct. 1962 (2014) ..........................................................................................7

*Phantomalert, Inc. v. Google Inc.*,
    No. 15-CV-03986-JCS, 2015 WL 8648669 (N.D. Cal. Dec. 14, 2015) .....................6, 7

*R Power Biofuels, LLC v. Chemex LLC*,
    2016 U.S. Dist. LEXIS 156727, 91 U.C.C. Rep. Serv. 2d....................................16, 17

*Salt Optics, Inc. v. Jand, Inc.*,
    No. SACV 10-0828, 2010 WL 4961702 (C.D. Cal. Nov. 19, 2010)................................8

*Sega Enters. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992)..................................................................................6

*Silicon Knights v. Crystal Dynamics*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ......................................................................17

*Sousanis v. Northwest Airlines, Inc.*,
    No. C-99-2994 MHP, 2000 WL 34015861 (N.D. Cal. Mar. 3, 2000) ..........................14

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
    7 F.3d 1434 (9th Cir. 1993)....................................................................................14

*Superchips, Inc. v. St. & Performance Elecs., Inc.*,
    No. 6:00-CV-896-ORL31KRS, 2001 WL 1795939 (M.D. Fla. Dec. 6, 2001) ................7

3

MOTION TO DISMISS

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2007)............................................................................11

*Synopsys, Inc. v. ATopTech, Inc.*,
    No. C 13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) .........................8

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
    307 F.3d 775 (9th Cir. 2002).............................................................................7

*Zella v. E. W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ................................................................8

**State Cases**

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ..............................................................................14, 15

*Daugherty v. Am. Honda Motor Co.*,
    144 Cal. App. 4th 824 (Cal. Ct. App. 2006) ..........................................................15

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
    11 Cal. 4th 376 (1995).............................................................................16, 18

*Gregory v. Albertson's, Inc.*,
    104 Cal. App. 4th 845 (2002) ...........................................................................15

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ............................................................................16, 17

*Schnall v. Hertz Corp.*,
    78 Cal. App. 4th 1144 (2000) ...........................................................................15

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (1996) ............................................................................16

**Federal Statutes**

15 U.S.C. § 1125 ..................................................................................9, 10, 11

15 U.S.C. § 1125(a)(1) .................................................................................9

15 U.S.C. § 1125(a)(1)(A) ............................................................................11

15 U.S.C. § 1125(a)(1)(B) ........................................................................10, 11

17 U.S.C. § 512(c) .....................................................................................1

**State Statutes**

California Business & Professions Code § 17200 ...............................................2, 13, 15

California Business & Professions Code § 17200 ...................................................................3

California Business & Professions Code § 17204 .................................................................13

California Business & Professions Code § 17500 .........................................................2, 3, 12

**Rules**

Federal Rules of Civil Procedure, Rule 9(b)...................................................................12, 15

Federal Rules of Civil Procedure, Rule 12(b)(6) ...........................................................3, 5, 8

**Constitutional Provisions**

U.S. Constitution, First Amendment..................................................................................9

**Other Authorities**

Restatement (Second) of Torts § 766, cmt. p. ...................................................................16

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.**   **INTRODUCTION**

Chegg, Inc. is a leading provider of digital learning services designed to improve students' academic experiences through Chegg's proprietary online study aid tools, content authored by Chegg, and content licensed from the major academic publishers. Through its "Chegg Study" service, Chegg offers a searchable database of proprietary step-by-step solutions to licensed textbook questions, and an Expert Q&A platform that operates as a user-generated content site, subject to the safe harbor protections of the Digital Millennium Copyright Act, 17 U.S.C. § 512(c).  This case involves the Expert Q&A platform which allows students to directly upload questions for which they seek answers or more fulsome analysis which may not be available in existing study guides. This case involves: (1) a small set of user-uploaded questions, and (2) answers to those questions which were authored by Chegg "experts." Plaintiff alleges that the user submitted exam and study guide questions and original Chegg answers to these factual questions infringe alleged copyrights in chemistry exam and study questions, which are factual in nature and entitled at most to only "thin" protection. Chegg immediately took down the user-uploaded questions at issue upon receiving a letter from the plaintiff a month before this suit was filed, despite the fact that plaintiff failed to submit DMCA-compliant notifications which require express representations under penalty of perjury, and in the Ninth Circuit also require that the copyright owner have a legitimate belief that the material at issue is not used in a manner that constitutes a fair use. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016). While plaintiff was unwilling to risk sanctions under the DMCA by submitting a compliant DMCA notification under penalty of perjury, Chegg nonetheless expeditiously removed all of the items identified by plaintiff immediately after it received plaintiff's pre-suit letter because Chegg does not condone, but rather seeks to deter and punish, alleged user infringement. Notwithstanding the availability of the DMCA process and the fact that Chegg confirmed to plaintiff within two (2) business days that all identified user uploads were removed from its site, plaintiff nonetheless proceeded to file this lawsuit.

Chegg has no liability under the DMCA safe harbor. However, because that is an issue better suited for summary judgment (if the case proceeds that far), this motion is focused more narrowly on

obvious pleading defects in plaintiff's complaint.[1] Here, plaintiff fails to state a claim for copyright infringement because it refuses to specifically allege which works allegedly were infringed by which user-uploaded questions or Chegg answers, fails to actually identify the copyrighted works at issue (offering instead merely examples, even though it apparently owns more than a hundred registrations), fails to allege copyrightability in its factual questions which are not entitled to a presumption of copyrightability in this case, and fails to allege registration of the works ostensibly at issue, making it impossible for Chegg (or the court) to fairly know what actually is in dispute. Moreover, plaintiff astonishingly alleges that original answers to plaintiff's alleged questions are infringing even though they were created by Chegg and not copied from plaintiff's works, because the answers reflect the questions and therefore are "derivative works." In other words, plaintiff not only alleges infringement of factual information without pleading sufficient facts to establish either copyrightability or infringement, but it also seems to assert that its customers (students) cannot seek help with study guide questions without exposing themselves and anyone helping them to liability for copyright infringement, which represents an incredible overreach unsupported by case authority.

Plaintiff's Lanham Act claim is preempted by *Dastar*. In addition, the Lanham Act, FAL and UCL claims fail because they are all premised on the illogical assumption that an advertisement for a Chegg app explaining that students can "[s]nap a picture of a tough problem & get answers back ASAP" and displaying licensed content (not plaintiff's alleged work) somehow misleads students into violating plaintiff's copyrights by failing to appropriately warn potential Chegg users of the consequences of copyright violations. Plaintiff boldly argues, again without legal support, that a student becomes a direct infringer when he or she seeks homework help and would purport to place an obligation on Chegg to warn students about plaintiff's novel theory of copyright infringement. As set forth in more detail below, plaintiff's theories do not articulate a cognizable legal theory under the Lanham Act, FAL or UCL.

Lastly, plaintiff fails to state a claim for tortious interference for allegedly deterring Chegg

---

[1] Plaintiff alleges claims for copyright infringement; false advertising or false designation of origin under the Lanham Act; false advertising under Cal. Bus. & Prof. Code § 17500 ("FAL"); unfair competition under Cal. Bus. & Prof. Code § 17200 ("UCL"); and tortious interference with prospective economic advantage.

users from purchasing plaintiff's study guides, which is belied by plaintiff's own screenshots attached to Exhibit A showing that users submit questions from study guides seeking a "deeper" explanation of the analysis provided in plaintiff's purported materials. Plaintiff's Exhibit A demonstrates that students purchase *both* plaintiff's study guides and Chegg's services because those services are complimentary.

### STATEMENT OF ISSUES TO BE DECIDED

Whether plaintiff's claims are subject to dismissal under Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim for (a) copyright infringement, where plaintiff failed to allege the actual works at issue, which items from exhibit A correspond to which alleged works, plausible grounds for copyrightability in factual questions (in the absence of a presumption of copyrightability) or even registration; (b) violation of the Lanham Act where the underlying allegations are based on copyright, not trademark infringement, and are therefore preempted by *Dastar*; (c) violations of Cal. Bus. & Prof. Code §§ 17500 *et seq.* and 17200 *et seq.* based on an alleged advertisement for Chegg's "snap a picture" tool which plaintiff alleges misleads students into believing they can lawfully upload copyrighted questions to cheat on exams (but otherwise is not alleged to contain any false representations about the actual tool itself); and (d) tortious interference with prospective economic advantage, based on the allegation that Chegg's study aid services create a disincentive for students to purchase plaintiff's study guides, a contention belied by the attachments to plaintiff's complaint demonstrating that students use Chegg's service to enhance their learning based on plaintiff's alleged study guides.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff identified alleged copyright registrations to 7 chemistry exams and one organic chemistry study guide, but claims to own additional unspecified copyrighted exams and study guides, which may or may not be part of its complaint. Compl. ¶¶ 21-22. Plaintiff alleges that Chegg infringed all eight of the identified registered copyrights, plus "additional registered copyrights owned by the Examinations Institute (collectively, the 'Examinations Institute's Registered Copyrights')" that are not identified in the complaint. *Id.* ¶ 23. The online public copyright catalog maintained by the U.S. Copyright Office shows 189 exams registered to plaintiff. *See* Request for

Judicial Notice, Ex. 2-3. It is therefore impossible for Chegg to fairly know or understand which works are actually at issue – the eight purportedly illustrative examples or the 189 registrations? Plainly, the plaintiff could if it wanted to identify which uploads from Exhibit A correspond to which registrations, if any. This deliberate obfuscation attempts to mask the weakness of plaintiff's claim.

Neither the study guide nor any of the actual exams identified by plaintiff were attached to the complaint filed under seal. They are also not publicly available for inspection. The copyright registrations for plaintiff's exams were allegedly obtained "using the U.S. Copyright Office's Secure Test Procedures" through which "[i]n lieu of deposit materials, Secure Test Procedures only require deposit of 'identifying material,' which may consist of an examination cover page and a mostly redacted final page (with only 'a narrow diagonal strip of visible content') for public inspection in appropriate circumstances." Compl. ¶ 18. Unlike in the typical copyright infringement suit, this means that the registration certificates and statements contained therein are entitled to *no* presumption that they are correct or accurate. *See infra*, § IV(A).  Neither Chegg, nor the Court, can determine from the face of plaintiff's complaint the fundamental elements of any copyright infringement analysis:  (a) exactly what are the copyrighted works, (b) what material is allegedly a copy of those copyrighted works, and (c) to what extent to they overlap.

Plaintiff does not allege that any of its exams (which individually contain as many as 70 questions each)[2] or study guides were uploaded onto Chegg's website in their entirety. Rather, the screenshots attached as Exhibit A show separate user-uploaded images with as little as one or two questions photographed, to at most a single page out of an alleged copyrighted exam presumably containing dozens of pages.[3] Plaintiff fails to identify for each screenshot the purported copyrighted exam or study guide that plaintiff alleges is infringed by the user-uploaded image—a material omission that undermines plaintiff's copyright claim because plaintiff fails to allege facts to show virtual identicality (or even substantial similarity) between plaintiff's factual chemistry questions and the accused material to establish infringement. *See infra* § IV(A).

---

[2] *See* Exh. A (screenshot "Question: ACS Exams 67. During melting of a molecular compou [sic] . . ." showing that there are 70 questions on an exam that plaintiff purports to own the copyright to).

[3] Exhibit A includes 40 screenshots of user-uploaded questions with answers posted by Chegg "experts." Of these, 5 are duplicates or the same questions posed by the same or different users.

4

Moreover, while plaintiff asserts that *answers* to user-uploaded questions also infringe its alleged copyrights,[4] nearly all of the answers attached to Exhibit A were handwritten or typed by Chegg experts, and plainly do not infringe the alleged copyrighted exams which are comprised only of questions. Chegg experts' answers cannot possibly be infringing where they are being asked by users to "explain [how to solve the problem] on a deeper level" or to provide an "explanation as to why" or "where/how they got" to the answer, in instances where the student was unable to fully understand the information provided in the actual study material. *See* Compl., Exh. A (user upload purporting to ask question from exam prep material). These examples demonstrate that Chegg's study aid services enhance and compliment, rather than supplant, the market for plaintiff's study guides, and are used appropriately by students seeking a "deeper" comprehension of the academic concepts than what is provided in plaintiff's own materials.

## III.   LEGAL STANDARD

A complaint will only survive a Rule 12(b)(6) motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on a 12(b)(6) motion, courts accept "all well-pleaded allegations of material fact" and draw all reasonable inferences in favor of the nonmoving party, but are not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are -merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   ARGUMENT

### A.   Plaintiff Fails to Allege A Claim For Copyright Infringement

Plaintiff fails to state a claim for copyright infringement for at least two independent reasons:

---

[4] *See id.* ¶ 62 ("Chegg pays its experts per question answered and fires experts that fail to answer more than a certain number of questions, regardless of whether such questions **or answers** would infringe third-party rights, including copyright . . ." (emphasis added)).

First, plaintiff does not identify the actual copyrighted works that it alleges Chegg has infringed, which in this case would not be entitled to the ordinary presumption of validity because the complaint alleges that "mostly redacted" copies of its factual, chemistry materials are provided "[i]n lieu of deposit materials." Compl. ¶ 18. Relatedly, in not identifying the works at issue (and tying them to allegedly infringing material), plaintiff has failed to establish that the works are actually registered. Second, because plaintiff's chemistry exam questions and study guides, like other works that are scientific and factual in nature, are entitled to only "thin" protection, plaintiff must show "virtual identicality" between the alleged copyrighted works (containing multiple questions) and the separately uploaded user questions, to establish infringement, which it fails to and cannot do without identifying or attaching the actual works to the complaint. *See Feist Publications, Inc. v. Rural Tel. Service Co*, 499 U.S. 340, 347-50 (1991) (explaining that "all facts—**scientific**, historical, biographical, and news of the day . . . may not be copyrighted and are part of the public domain," and that the copyright in a factual compilation is "thin"); *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992) ("To the extent that a work is functional or factual, it may be copied, as may those expressive elements of the work that must necessarily be used as incident to expression of the underlying ideas, functional concepts, or facts. Works of fiction receive greater protection than works that have strong factual elements, such as historical or biographical works, or works that have strong functional elements, such as accounting textbooks.") (internal citations and quotation marks omitted); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."); *see also Phantomalert, Inc. v. Google Inc.*, No. 15-CV-03986-JCS, 2015 WL 8648669, at *10, 14 (N.D. Cal. Dec. 14, 2015) (dismissing plaintiff's copyright claim where the information allegedly copied by defendant was inherently factual, involving 'traffic conditions, speed restrictions, and police-monitors,' that is, objective facts that can be discovered and reported[.]").

Plaintiff fails to allege facts to establish that its chemistry exams are entitled to copyright protection. While plaintiff has identified copyright registrations in 7 "secure examinations" and one study guide (Compl. ¶¶ 21, 22)—none of which are attached to the complaint or otherwise made

publicly available[5]—plaintiff alleges that these registrations are merely a subset of additional copyrighted works it owns and believes that Chegg infringes. *See id.* at ¶¶ 21-23 (alleging that Chegg "has also infringed additional registered copyrights owned by" plaintiff that are not identified in the complaint). Plaintiff provides "examples" of its works but does not actually identify which works are at issue and allegedly infringed by Exhibit A to its complaint. It alleges generally that it used the Copyright Office's "Secure Test Procedures" program and therefore there is no actual deposit copy. *Id.* at ¶ 18.  Although the Ninth Circuit previously held that a plaintiff could file suit based merely on evidence that it has applied to register a copyright, *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th Cir. 2010), the U.S. Supreme Court clarified more recently in *Petrella v. Metro-Goldwyn-Mayer, Inc.* that "[a]lthough registration is 'permissive,' both the certificate and the original work must be on file with the Copyright Office before a copyright owner can sue for infringement. §§ 408(b), 411(a)." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1977 (2014).  Plaintiff accordingly needs to expressly identify which registered works are at issue (not merely "examples" when it allegedly owns hundreds of registrations) in order to maintain this suit.

In addition, in this case, it should be required to allege sufficient facts to establish copyrightability where it is suing over presumptively unprotectable scientific facts and has used a special administrative procedure to avoid providing a deposit copy. Because plaintiff did not deposit unredacted copies of its works, it should not be entitled to the normal presumptions of originality and copyrightability that attach when a registration has been obtained. *See Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 779–80 (9th Cir. 2002) (noting that copyright registrations accompanied by a deposit of limited sections of source code are not entitled to a presumption of validity because the partial deposit does not allow the register of copyright to determine the existence of copyrightable material); *see also Superchips, Inc. v. St. & Performance Elecs., Inc.*, No. 6:00-CV-896-ORL31KRS, 2001 WL 1795939, at *2 (M.D. Fla. Dec. 6, 2001) (holding, by analogy, that "plaintiffs who produce registration certificates issued under the rule of doubt do not benefit from a rebuttable presumption of copyright validity and retain the burden of proving that issue throughout the case."). Again, this underscores the need in this case for plaintiff to plead facts to establish that

---

[5] If plaintiff's concern is confidentiality, a more specific complaint could be filed under seal.

the scientific facts at issue in this case actually are entitled to copyright protection. *See Phantomalert*, 2015 WL 8648669, at *10, 14.

Plaintiff also fails to allege facts sufficient to establish infringement. Nothing in Exhibit A or the complaint identifies what allegedly infringing material infringes which particular asserted work owned by plaintiff (or if the allegedly infringing material infringes an unspecified registered copyright alluded to in paragraph 23 of the complaint). This is especially problematic here where the alleged exam questions involve scientific facts entitled to no or only thin copyright protection. If one of seventy exam questions in an alleged work was uploaded by a user, for example, this would not establish virtual identicality (let alone even substantial similarity). Plaintiff's failure to identify the specific works infringed renders the claim deficient and subject to dismissal. *See Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) ("A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original'") (citing *Feist*, 499 U.S. at 361); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd sub nom. Kelly v. L.L. Cool J*, 23 F.3d 398 (2d Cir. 1994) ("A properly plead copyright infringement claim must allege 1) which specific original works are the subject of the copyright claim . . . ."); *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-CV-02965 SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) (granting defendant's motion to dismiss copyright claim where "Plaintiff never makes clear what Defendant copied, which makes it impossible for the Court to find Plaintiff's claim plausible."); *Salt Optics, Inc. v. Jand, Inc.*, No. SACV 10-0828 DOC (RNBx), 2010 WL 4961702, at *6 (C.D. Cal. Nov. 19, 2010) (granting defendants' 12(b)(6) motion to dismiss where copyright registrations alleged and attached to the complaint were "broad," referring to "all 'text(s), photograph(s), selection, arrangement and compilation'" of plaintiff's website, and plaintiff made "no attempt to identify which portions of the website or catalog it accuses [d]efendants of infringing).

Finally, plaintiff cannot assert a copyright interest in answers to questions independently created by Chegg "experts." Plaintiff's apparent argument that an original answer to a factual question infringes its purported copyright interest in those factual questions is astonishing. With respect to these answers, plaintiff seeks monopoly-like protection for its alleged works which is not

recognized under copyright law. *See Zella v. E. W. Scripps Co.*, 529 F. Supp. 2d 1124, 1138-39 (C.D. Cal. 2007) (dismissing claim that defendant's cooking/talk show infringed plaintiff's treatment for a cooking/talk show because allowing suit to proceed "would give Plaintiffs a monopoly over . . . generic elements expressed as a television talk show featuring celebrity guests and cooking[.]").[6]

## B. Plaintiff's Lanham Act Claim Is A Disguised Copyright Claim And Is Subject To Dismissal

Plaintiff does not allege trademark infringement but rather attempts to shoehorn copyright claims under the Lanham Act that, under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), is subject to dismissal because the U.S. Supreme Court made clear in that case that the Lanham Act cannot be extended "into areas traditionally occupied by patent or copyright." *Id.* at 34. Section 43(a) prohibits "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ." 15 U.S.C. § 11125(a)(1). Section 43(a)(1) therefore has two prongs: subsection (A) covers trademark

---

[6] While a patent grants its owner the right to prevent others from using a patented invention, the same is not true for a copyright, which protects only original and creative expression and cannot prevent other expression due to the First Amendment. *See Apple Computer*, 35 F.3d at 1443 (finding "Apple cannot get patent-like protection for the idea of a graphical user interface[.]"); *see also Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556 (1985) (affirming "that copyright's idea/expression dichotomy strikes a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression.") (internal quotation marks and citation omitted); *Baker v. Selden*, 101 U.S. 99, 102–03, (1879) ("The difference between the two things, letters-patent and copyright, may be illustrated by reference to the subjects just enumerated. Take the case of medicines. Certain mixtures are found to be of great value in the healing art. If the discoverer writes and publishes a book on the subject (as regular physicians generally do), he gains no exclusive right to the manufacture and sale of the medicine; he gives that to the public. If he desires to acquire such exclusive right, he must obtain a patent for the mixture as a new art, manufacture, or composition of matter. He may copyright his book, if he pleases; but that only secures to him the exclusive right of printing and publishing his book. So of all other inventions or discoveries.").

1   infringement and false designation of origin claims, while subjection (B) covers false advertising

2   claims. *See Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990-91 (9th Cir. 2008).

3         Plaintiff does not allege facts to demonstrate use of a false or misleading representation of fact

4   regarding the "origin" or the "nature, characteristics, qualities or geographic origin" of Chegg's

5   goods or services. Instead, plaintiff alleges copyright violations—namely, that "Chegg's

6   advertisements instruct students to 'snap a picture' of difficult questions or problems," including

7   standardized test questions, and to upload them to Chegg.com, which "is likely to cause confusion, or

8   mistake, or to deceive students to believe such conduct is permissible, not unlawful, does not infringe

9   copyright, does not expose such students to personal liability, and/or is approved or endorsed by

10  Examinations Institute whose materials are sold and rented on Chegg.com." Compl. ¶ 85; *see also id.*

11  ¶ 86 ("Chegg's advertisements were misleading and/or false . . . and deceive or are likely to deceive

12  students to think that uploading photographed examinations to Chegg.com can be carried out with

13  impunity"), ¶ 87 ("Chegg . . . has willfully caused actual confusion among students").[7]

14        While plaintiff purports to bring a "false advertising" claim, it attempts to make allegations

15  pertaining to false designation of origin, none of which are sufficient to state a section 43(a) claim

16  under either prong. First, there are no facts alleged establishing the likelihood of confusion as to

17  "origin," where the advertisement at issue that allegedly instructs users to "Snap a picture of a tough

18  problem & get answers" (Compl. ¶ 56) displays a non-chemistry question that plaintiff does not and

19  cannot allege is owned or copyrighted by plaintiff (indeed, it is a question licensed to Chegg by a

20  third party and not by plaintiff). Second, there is no plausible reason the Chegg app ad is likely to

21  cause confusion or misrepresent the characteristics of Chegg's products or the plaintiff's alleged

22  copyrighted works, where the alleged advertisement at issue merely demonstrates how app users can

23  use the camera feature of their smartphone to obtain virtual tutoring or advice from a Chegg "expert"

24  and does not indicate that Chegg's service is approved or endorsed by the Examinations Institute—a

25  company who is not referred to *at all* in the ad. *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898,

26  902 (9th Cir. 2007) (explaining that § 1125(a)(1)(B) creates liability only for product disparagement,

27

28  [7] The remaining Lanham Act allegations made by plaintiff are merely conclusory recitations of the elements of a Section 1125(a)(1)(B) claim that fail to state a plausible claim for relief. *See* Compl. ¶¶ 86-92; *Iqbal*, 556 U.S. at 663-664; *Twombly*, 550 U.S. at 555.

i.e., misrepresentation of "the nature, characteristics, qualities or geographic origin of another person's goods, services or commercial activities," and holding that plaintiff did not allege or otherwise show that defendant made any statements disparaging its goods or services). There are no allegations demonstrating how the ad at issue could plausibly be construed to mislead students into violating plaintiff's copyrights by failing to appropriately warn potential Chegg users of the consequences of copyright violations.

Rather, plaintiff's claim is predicated on the allegations that the ad purportedly deceives students into believing that they can "upload photographed examination questions containing [plaintiff's] content to Chegg.com" and that "such conduct . . . does not infringe copyright"—i.e., the allegations underlying plaintiff's copyright infringement claim. Compl. ¶¶ 85, 91.[8] These allegations sound in copyright and do not state a claim for relief under either prong of section 43(a) of the Lanham Act. *See Dastar*, 539 U.S. at 31 (holding that "origin" as used in § 43(a)(1)(A) means "source," as in "the producer of the tangible product sold in the marketplace," and is "incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain"); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1143-44 (9th Cir. 2007) (upholding dismissal under *Dastar* the plaintiff's section 1125(a)(1)(B) claim where plaintiff alleged that defendants engaged in unfair competition by violating copyright laws, thereby paying less in royalties and licensing fees, and by misrepresenting their compliance with licensing policies, which allowed them to sell pirated records at less than the plaintiff's own prices); *see also Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1302-07 (Fed. Cir. 2009) (holding that plaintiff's section 43(a) claim under subsection (A) and (B), which were based on the defendant's advertisements that their basketball featured "innovative" technology and that plaintiff alleged were false because they "conveyed the idea that '[defendant] invented and owns the basketball technology," were barred under *Dastar* because the claims did not concern the origin of the goods or their nature, characteristics or qualities, but instead concerned designation of authorship, i.e., that defendant is the creator of the design); *Fractional Villas, Inc. v. Tahoe Clubhouse*, No. 08cv1396–IEG–POR, 2009

---

[8] Notably, Chegg users must agree to Chegg's Terms of Use which include a user's representation and warranty that any content uploaded does not violate the privacy rights, publicity rights, copyrights, contract rights or any other rights of any person or entity. *See* RJN, Exh. 1.

WL 160932, at *4 (S.D. Cal. Jan. 22, 2009) (dismissing plaintiff's Lanham Act claim as preempted under *Dastar* where the plaintiff had alleged that defendant's website had copied extensive portions of the plaintiff's website verbatim without permission).

**C.     Plaintiff Fails To State A Claim Under Cal. Bus. & Prof. Code § 17500 ("FAL")**

The FAL makes it unlawful for any person "to make or disseminate or cause to be made or disseminated before the public . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. The plain language of the statute—which prohibits false or misleading *statements*—does not encompass omissions. Accordingly, "[t]here can be no FAL claim where there is no 'statement' at all." *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-00582-JD, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015).

Plaintiff's claim under § 17500, which are based on the same "snap a picture" ad underlying the Lanham Act claim (*see* Compl. ¶ 94), fails because plaintiff's allegations do not demonstrate how the advertisement at issue, which merely demonstrates how an app user can use the camera feature of his or her smartphone to obtain virtual tutoring from a Chegg "expert," is false or misleading. It cannot be reasonably inferred from the content of the ad itself (which displays a work licensed to Chegg by a third party, not by plaintiff) that Chegg users would construe the ad to mean that they can upload infringing copyrighted content "with impunity," where the ad itself contains no statement to that effect, and Chegg's Terms of Use expressly prohibit users from engaging in infringing conduct on its site. *See* Compl. ¶¶ 56, 98; RJN, Exh. 1.

Additionally, Plaintiff's claim sounds in fraud and therefore must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) by alleging specific facts that establish why the allegedly misleading and fraudulent "snap a picture" statement was false.  The allegations in the complaint do not "state with particularity the circumstances constituting fraud or mistake" to satisfy the heightened pleading standard of Rule 9(b), and instead makes mere bald recitals of the elements of fraud that do not provide any specific factual bases for its allegations.  Where, as here, a claimants allegations assert a "unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim, . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and

1   the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford*

2   *Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (applying Rule 9(b) standard to uphold dismissal of

3   UCL claim that Ford Motor Company and its "co-conspirator" dealerships knowingly misrepresented

4   to the public that certain vehicles were "safer and more reliable").

5       **D.**    **Plaintiff Fails To State A Claim Under Cal. Bus. & Prof. Code § 17200 ("UCL")**

6       California's UCL provides a cause of action for business practices that are (1) unlawful, (2)

7   unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200.  The complaint generally alleges Chegg

8   violates all three prongs of the UCL—unlawful, unfair and fraudulent business practices—by

9   advertising to students its "snap a picture" tool, but alleging no facts to support the inference that this

10  "encourage[es] students to cheat on their examinations and to infringe copyrights through the

11  provision of its Q&A service." Compl. ¶¶ 109, 111. These allegations, and plaintiff's threadbare

12  recitation of elements for a UCL claim, fail to state a claim for relief under any prong of the UCL.

13      **1.**    **Plaintiff Fails To Allege Standing**

14      "To establish standing under the UCL, a plaintiff must '(1) establish a loss or deprivation of

15  money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that

16  economic injury was the result of, i.e., *caused by*, the [unfair competition] . . . .'" *Johnson v. PNC*

17  *Mortgage*, No. C 14–02976 LB, 2014 WL 3962662, at *11 (N.D. Cal. Aug. 12, 2014) (citing *Kwikset*

18  *Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011) (emphasis in original) and Cal. Bus & Prof.

19  Code § 17204).  In *Johnson*, the court dismissed plaintiffs' UCL claim for failing to allege economic

20  injury, "*i.e.*, that they lost money or property as a result of Defendants' unlawful business practice"

21  based on an alleged violation of California's foreclosure legislation by failing to provide a single

22  point of contact in connection with plaintiffs' loan application. *Id.* at *12. Plaintiffs alleged that this

23  violation caused them delays in obtaining a loan modification, which resulted in increased interest

24  and late fees, and also caused them to pay for multiple overnight mailings related to their application.

25  *Id.* The court rejected this argument, held that there was "no logical connection between the alleged

26  failure to appoint a single point of contact," and plaintiff's alleged damages, which were "pure

27  speculation and does not establish causation." *Id.*

28      Here, there is likewise no "logical connection" between Chegg's "snap a picture" app (or even

---

the tool itself) and purported damage to plaintiff's alleged "norming procedures as well as the overall efficacy and reliability of its examinations," or its "reputation harm," neither of which constitute economic damages . Compl. ¶¶ 113, 114. Plaintiff's alleged "costs associated with recalls of compromised examinations" are also not supported with any facts showing any causation. The allegations make clear that any alleged cheating on its exams was done by students (*see id.* ¶ 111), not Chegg, and which allegedly occurred without Chegg's knowledge that these students were posting exam questions to cheat on plaintiff's exams. There is no reason to believe that Chegg is at fault if plaintiff (or its exam instructors) fails to properly police its own exams and allows students to walk out with copies of its exams and take photos of them to post online.

### 2.   Plaintiff Fails To Allege A Violation Of The UCL

Plaintiff fails to allege a  UCL claim based on the "unlawful" prong which "borrows violations of other laws and treats them as unlawful practices" but must be "independently actionable" under the UCL. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 at 180 (1999) (internal quotation marks and citations omitted).  Plaintiff fails to allege that Chegg's business acts or practices violated any specific law. *See* Compl. 107 (alleging boilerplate language that "Chegg has engaged in unlawful, unfair, nad fraudulent business acts or practices").  To the extent that the alleged predicate act is alleged to be copyright infringement, the claim is preempted. *See Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439, 1442 (9th Cir. 1993) (holding that a UCL claim based on a competitor's "pirating" of its lathe design was preempted by copyright laws because the claim did not contain an additional element beyond that of a federal copyright infringement claim).  Further, to the extent that plaintiff's allegations rely on defective alleged violations of the Copyright Act or Lanham Act (as discussed earlier in this brief), plaintiff cannot establish the predicate unlawful conduct required for a UCL claim based on those defective claims.

Similarly, the complaint does not specify what conduct plaintiff contends constitutes Chegg's unfair business practices, which is fatal to this claim. *Sousanis v. Northwest Airlines, Inc.*, No. C-99-2994 MHP, 2000 WL 34015861, at *8 (N.D. Cal. Mar. 3, 2000) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999), and dismissing plaintiff's UCL unfairness claims because plaintiff failed to plead what allegedly unfair business practice its Section

17200 claim was premised on).  Further, the complaint suffers from an additional fundamental flaw in that it fails to "tether" Chegg's allegedly unfair business practice to any "legislatively declared policy." *Cel-Tech*, 20 Cal. 4th at 185, 186-87 (stating that "we must require that any finding of unfairness to competitors [under the UCL] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition");[9] *see also Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (reading "*Cel-Tech* to require that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory, or regulatory provisions"); *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166-67 (2000) ("any claims of unfairness under the UCL should be defined in connection with a legislatively declared policy"). Here, plaintiff's complaint fails to allege any antitrust violations or harms that may threaten competition or any other legislatively or otherwise declared policy to which its UCL claim purports to be tethered.  Therefore, plaintiff has failed to state a claim under the "unfair" prong of the UCL.

Lastly, plaintiff's failure to meet the heightened standard of Rule (9)(b) in asserting Chegg's conduct to be fraudulent renders its UCL claim under the fraud prong insufficient as a matter of law. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125, (9th Cir. 2009) (holding that  Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL). In addition to the heightened pleading standards of Rule 9(b), courts analyzing UCL claims brought under the fraudulent prong have held that "'[a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL.'"  *Hodsdon v. Mars, Inc.*, 162 F.Supp.3d 1016, 1025 (N.D. Cal. 2016)*, (quoting Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557, (Cal. Ct. App. 2007)); *see also Daugherty v. Am. Honda Motor Co.,* 144 Cal. App. 4th 824, 838 (Cal. Ct. App. 2006), *as modified* (Nov. 8, 2006) ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL.").  Here, Chegg's Terms of Use expressly prohibit users from engaging in infringement on its site, and there are no allegations suggesting that Chegg had any duty to disclose potential copyright infringement

---

[9] The California Supreme Court explains further that, "when a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to . . . a violation of the law, or otherwise significantly threatens or harms competition." *Id.*

1    concerns related to the "snap a picture" feature of its app.

2    **E.**      **Plaintiff Fails To State A Claim For Tortious Interference With Prospective**
3                **Economic Advantage**

        Plaintiff's claim for tortious interference with prospective economic advantage fails to state
4
     any plausible claim. In addition to failing to identify a relationship with any specific individual
5
     (which alone defeats the claim), plaintiff further cannot plausibly allege that Chegg's services
6
     "supplant" (Compl. ¶ 127) plaintiff's study guides; in reality, Chegg's services to students are
7
     complementary to those of plaintiff, as demonstrated by plaintiff's own exhibits.
8
        The elements of tortious interference with prospective economic advantage are: "(1) an
9
     economic relationship between the plaintiff and some third party, with the probability of future
10
     economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional
11
     acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the
12
     relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."
13
     *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (citations and quotes
14
     omitted). In addition to these elements, a claim for interference with prospective economic advantage
15
     requires proof that the defendant "not only knowingly interfered with the plaintiff's expectancy, but
16
     engaged in conduct that was wrongful by some legal measure other than the fact of interference
17
     itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995).
18
        Plaintiff cannot plead any of the elements of the tort because it fails to plead the threshold
19
     requirement of a relationship with a "specific" third party. While the "actual name of the third party
20
     need not be provided, the plaintiff must allege a relationship with 'a specific, albeit unnamed' third
21
     party." *R Power Biofuels, LLC v. Chemex LLC*, 2016 U.S. Dist. LEXIS 156727, *49, 91 U.C.C. Rep.
22
     Serv. 2d (Callaghan) 167 (N.D. Cal. Nov. 11, 2016) (quoting *Ramona Manor Convalescent Hosp. v.*
23
     *Care Enterps.*, 177 Cal. App. 3d 1120, 1133 (1986)); *see also Westside Ctr. Assocs. v. Safeway*
24
     *Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996) (citing *Ramona* approvingly); Restatement (Second)
25
     of Torts § 766, cmt. p ("[t]o subject the actor to liability under this rule, his conduct must be intended
26
     to affect the contract of a specific person."). This Court has previously applied *Westside's* and
27
     *Ramona's* holdings in a case applying California law. *See Damabeh v. 7-Eleven, Inc.*, 2013 U.S. Dist.
28
     LEXIS 66565, at *29, 31 (N.D. Cal. May 8, 2013). In *Damabeh*, this Court held that in the context of

                                                        16

claims for negligent and tortious interference with prospective economic advantage, "it is essential that the Plaintiff allege facts showing that Defendant interfered with Plaintiff's relationship with a particular individual." *Id.* ("Plaintiff alleges that Defendant interfered 'with [Plaintiff's] employees and customers.' However, Plaintiff does not specifically identify any of these employees and customers. Accordingly, Plaintiff's interference with prospective business advantage claims fail.") (internal citation omitted).

Plaintiff claims that it "has an economic relationship with each student that sits for its examinations" ("student test-taker[s]") (Compl. ¶¶ 123-124) and also with "each university that requires its students to sit for Examinations Institute examinations." Compl. ¶ 131. Identifying these broad categories of "student test takers" and "universities" falls far short of plaintiff's burden to plead a relationship with "a particular individual." *Damabeh*, 2013 U.S. Dist. LEXIS 66565, at *29; *see also R Power Biofuels, LLC*, 2016 U.S. Dist. LEXIS 156727, at *49 (interference claim failed where plaintiff "solely allege[d] that it has an economic relationship with 'major consumers of biodiesel,'" but did not "provide details about 'specific' companies," making it "impossible to even tell how many such relationships existed."). Indeed, if plaintiff's allegations were permitted to stand, then any manufacturer of pens, papers, highlighters, laptops, and any other materials that students and universities use could claim that they too have prospective relationships with students and universities that have been interfered upon by another party. Such a result is not what this tort is intended to yield. *See Silicon Knights v. Crystal Dynamics*, 983 F. Supp. 1303, 1311 (N.D. Cal. 1997) (requiring a plaintiff to plead that a business relationship presents the probability of future economic benefit prevents a plaintiff from seeking to impose tort liability based upon hypothetical relationships not established at the time the allegedly tortious acts were committed).

Because plaintiff has not alleged any specific relationship, it further cannot allege that Chegg had knowledge of any such relationship. *Korea Supply Co.*, 29 Cal. 4th at 1153. It simply is not reasonable to allege that Chegg "kn[ew] or should [have] know[n] of the Examinations Institute's relationships with each student" (Compl. ¶ 125) or "each university." (Compl. ¶ 132) because such relationships are vague and highly speculative in nature. Nor can plaintiff plausibly allege that Chegg committed any intentional act designed to disrupt those ambiguous relationships. *Id.*; *Name.Space,*

*Inc. v. Internet Corp. for Assigned Names & Nos*., 2013 U.S. Dist. LEXIS 72790, *25 (C.D. Cal. Mar. 4, 2013) ("the Complaint fails to allege any intentional actions undertaken by ICANN 'designed to disrupt' the relationship Plaintiff has with its clients or evidentiary facts of actual disruption and resulting economic harm"), *aff'd*, 795 F.3d 1124 (9th Cir. 2015). The student test-takers necessarily already purchased plaintiff's study guide or sat for the exam because they had access to the questions uploaded to Chegg. It is not plausible that students would use Chegg "in lieu of purchasing Examinations Institute's study guides" when the students already purchased the study guides and are using Chegg in addition to the study guide. *See* Compl. Exh. A. It is further unclear how Chegg has committed any intentional act to disrupt any prospective economic relationship with universities– which alleged relationship is in and of itself unclear and insufficiently alleged.

Even if plaintiff had plausibly alleged that it had specific relationships with students and universities that Chegg knew about and intentionally interfered with, plaintiff does not and cannot plead that any of these alleged elusive relationships were actually disrupted. *Nu Sci. Corp. v. eFasteam.com*, 2004 U.S. Dist. LEXIS 17763, *9-10 (N.D. Cal. Aug. 24, 2004) ("There are no allegations in the complaint from which the court could infer the probable disruption of an actual economic relationship. Rather, EFT relies on conclusory language that merely repeats the elements of the tort. Such vague allegations do not satisfy federal pleading requirement, and thus this claim must be dismissed."). Indeed, if anything, Chegg's services enhance any existing or prospective relationships with students by allowing them to crowd-source answers to questions for concepts that may not be adequately explained by plaintiff's study guides, making those study guides more useful. Plaintiff's own exhibits show that students who have in fact purchased plaintiff's study guides still seek additional insights from others on Chegg, where the student seeks further elaboration on the materials they purchased from plaintiff.

Finally, as set forth above, because plaintiff has not alleged plausible claims for copyright infringement, false advertising, unfair competition, or any other independently wrongful act, none of Chegg's actions are "wrongful by some legal measure other than the fact of interference itself" (*Della Penna*, 11 Cal. 4th at 393), a requirement for a tortious interference claim.

Plaintiff's claim for tortious interference not only fails to adequately allege the required

elements, it also fails to consider the reality that is reflected in its own exhibits: that Chegg's services to students supplement and enhance the value of plaintiff's products—they do not supplant plaintiff's products.

**V.     CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss should be granted.

Dated:  July 10, 2017                                  GREENBERG TRAURIG, LLP


By:   */s/ Ian C. Ballon*
            Ian C. Ballon
            Lori Chang

Attorneys for defendant, Chegg, Inc.